**TO: Clerk's Office**
**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**APPLICATION FOR LEAVE**
**TO FILE DOCUMENT UNDER SEAL**

*********************************

UNITED STATES OF AMERICA,

-v.-

TAE JUNG KIM,

22-MJ-89
Docket Number

*********************************

SUBMITTED BY: Plaintiff ___ Defendant ___ DOJ ✓
Name: AUSA John Vagelatos
Firm Name: U.S. Attorney's Office, Eastern District of N.Y.
Address: 271-A Cadman Plaza East
Brooklyn, New York 11201
Phone Number: (718) 254-6182
E-Mail Address: John.Vagelatos@usdoj.gov

INDICATE UPON THE PUBLIC DOCKET SHEET: YES ___ NO ✓
If yes, state description of document to be entered on docket sheet:

**A) If pursuant to a prior Court Order:**
Docket Number of Case in Which Entered: ___
Judge/Magistrate Judge: ___
Date Entered: ___

**B) If a new application,** the statute, regulation, or other legal basis that authorizes filing under seal

Ongoing criminal investigation with defendant at liberty.

**ORDERED SEALED AND PLACED IN THE CLERK'S OFFICE, AND MAY NOT BE UNSEALED UNLESS ORDERED BY THE COURT.**

DATED: Brooklyn, NEW YORK
1/31/2022

_Cheryl L. Pollak_ (signature)

**HONORABLE CHERYL L. POLLAK**
**U.S. MAGISTRATE JUDGE**

RECEIVED IN CLERK'S OFFICE 1/31/2022
_____
DATE

**MANDATORY CERTIFICATION OF SERVICE:**
A.) ___ A copy of this application either has been or will be promptly served upon all parties to this action, B.) ___ Service is excused by 31 U.S.C. 3730(b), or by the following other statute or regulation: ___; or C.) ✓ This is a criminal document submitted, and flight public safety, or security are significant concerns.
(Check one)

1/31/2022                                    _____
DATE                                          SIGNATURE

DG:JV/LZ
F. #2021R00723

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

         - against -

TAE JUNG KIM,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**TO BE FILED UNDER SEAL**

COMPLAINT AND AFFIDAVIT IN
SUPPORT OF APPLICATION FOR
ARREST WARRANT

(T. 18, U.S.C., §§ 1347, 2 and 3551 et seq.)

Case No. 22-MJ-89

EASTERN DISTRICT OF NEW YORK, SS:

         NADEEM AFZAL, being duly sworn, deposes and states that he is a Special Agent with the United States Department of Health and Human Services, Office of the Inspector General ("HHS-OIG"), duly appointed according to law and acting as such.

         In or about and between January 2015 and May 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant TAE JUNG KIM, together with others, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud one or more healthcare benefit programs, as defined in Title 18, United States Code, Section 24(b), to wit: Medicare and Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, Medicare and Medicaid, in connection with the delivery and payment for healthcare benefits, items and services.

         (Title 18, United States Code, Sections 1347, 2 and 3551 et seq.)

## INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application for an arrest warrant for the defendant TAE JUNG KIM.

2.  I have been a Special Agent with the United States Department of Health and Human Services, Office of the Inspector General ("HHS-OIG") since March 2017. During my tenure with HHS-OIG, I have participated in a variety of criminal health care fraud investigations, during the course of which I have interviewed witnesses, conducted physical surveillance, executed search warrants, and reviewed health care claims data, bank records, telephone records, medical records, invoices and other business records. I am familiar with the records and documents maintained by health care providers and the laws and regulations related to the administration of the Medicare and Medicaid programs and other health care benefit programs. As a result of my training and experience, I am familiar with techniques and methods of operation used by individuals involved in criminal activity to facilitate various kinds of fraud and to conceal their activities from detection by law enforcement authorities.

3.  Among other duties, I am currently participating in an investigation involving the Federal Bureau of Investigation and HHS-OIG into, among other things, violations of 18 U.S.C. § 1347 (health care fraud) by the defendant TAE JUNG KIM. Specifically, the investigation is focused on a scheme involving the submission of false and fraudulent claims for reimbursement for physical therapy services and procedures to Medicare, Medicaid and private insurers.

4.  I am familiar with the investigation described below through my own participation in the investigation, discussions with other federal law enforcement officers, records discovered in the course of this investigation that have been reviewed by myself and

other law enforcement officers, interviews and surveillance conducted by myself and other law enforcement officers and my training and experience.

5. Except as explicitly set forth below, in this affidavit I have not distinguished between facts of which I have personal knowledge and facts of which I have hearsay knowledge. Because this affidavit is being submitted for the limited purpose of seeking an arrest warrant, I have not set forth each and every fact learned during the course of this investigation, but simply those facts necessary to establish probable cause to support issuance of the warrant. Except where otherwise noted, all documents described in this affidavit are set forth in part and in substance only.

## PROBABLE CAUSE

I. Background

    A. The Medicare and Medicaid Programs

6. The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were at least 65 years old or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS"). Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

7. The New York State Medicaid program ("Medicaid") was a federal and state health care program providing benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care. CMS was responsible for overseeing the Medicaid program in participating states, including New York. Individuals who received benefits under Medicaid were similarly referred to as Medicaid "beneficiaries."

8.	Medicare and Medicaid each qualified as a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

9.	Medicare included coverage under two primary components, hospital insurance ("Medicare Part A") and medical insurance ("Medicare Part B"). Medicare Part B covered the costs of physicians' services and outpatient care, including physical therapy, occupational therapy, chiropractic services and diagnostic tests.

10.	Medicaid covered the costs of medical services and products ranging from routine preventative medical care for children to institutional care for the elderly and disabled. Among the specific medical services and products provided by Medicaid were physical therapy, occupational therapy and diagnostic tests.

11.	Medical providers and suppliers that sought to participate in Medicare Part B and Medicaid, and to bill Medicare and Medicaid for the cost of their treatment of eligible beneficiaries and related benefits, items and services, were required to apply for and receive a provider identification number ("PIN") or provider transaction access number ("PTAN") from each program. The PIN or PTAN allowed medical providers and suppliers to submit bills, known as claims, to Medicare and Medicaid and to obtain reimbursement for the cost of treatment and related health care benefits, items and services that they had supplied or provided to beneficiaries.

12.	Medical providers were authorized to submit claims to Medicare and Medicaid only for services they actually rendered and were required to maintain patient records verifying the provision of services. By submitting a claim, the provider was required to certify, among other things, that the services were rendered to the patient and were medically necessary.

5

13. Providers submitted claims to Medicare and Medicaid using billing codes, also called current procedural terminology or "CPT" codes, which were numbers referring to specific descriptions of the medical services provided to beneficiaries.

14. Medicare and Medicaid reimbursed providers for certain physical therapy and occupational therapy procedures. For certain of these procedures and claims submitted under CPT codes for private physical therapy practices in New York, Medicare and Medicaid required that the services be provided by licensed physical therapy professionals directly to one patient at a time, or "one-on-one."

15. For certain CPT codes, each unit represented 15 minutes of direct (one-on-one) time spent in patient contact ("15-minute timed codes"). For example, CPT code 97110 represented 15 minutes of physical therapy, specifically "Therapeutic Exercise." If a beneficiary received a total of 60 minutes of "Therapeutic Exercise" on a given date of service, the provider would report and bill for four units of 97110.

16. While Medicare and Medicaid expected providers to perform an average of 15 minutes of direct (one-on-one) patient contact for each 15-minute timed code billed, they permitted providers to bill for units as follows:

| Total Number of Minutes of Services of 15-Minute Timed Codes | Total Number of Billed Units |
| --- | --- |
| 8-22 minutes | 1 unit |
| 23-37 minutes | 2 units |
| 38-52 minutes | 3 units |
| 53-67 minutes | 4 units |
| 68-82 minutes | 5 units |
| 83-97 minutes | 6 units |

17. Medicare and Medicaid also allowed licensed Physical Therapist Assistants to provide certain physical therapy services under the supervision of, and with the on-site presence of, a licensed Physical Therapist. Under New York State law, the supervising Physical Therapist had to be physically present in the same facility and readily available to the Physical Therapist Assistant.

      B.      The Defendant and Relevant Entities

18. CNS Physical Therapy & Acupuncture, P.C. ("CNS") was a New York corporation that maintained an office at 108-25 63rd Avenue, Forest Hills, New York. CNS purportedly provided physical therapy and occupational therapy to beneficiaries. CNS was enrolled with Medicare and Medicaid from at least 2015 to the present.

19. The defendant TAE JUNG KIM was the owner of CNS and a New York State licensed Physical Therapist and acupuncturist.

20. "COMPANY-1" was a billing company, the identity of which is known to your affiant. The defendant TAE JUNG KIM employed staff at CNS who compiled patient records and prepared billing records that were sent to COMPANY-1.

      C.      CNS's Submission of Bills to COMPANY-1

21. In a voluntary interview with law enforcement, the defendant TAE JUNG KIM described CNS's billing as follows: KIM wrote CPT codes into patient notes; KIM's staff input the CPT codes into billing programs; KIM reviewed (and in some cases revised) the billing entries; and KIM's staff forwarded the billing information, including the CPT codes and units, to COMPANY-1 for submission to the healthcare benefit programs.

22. Similarly, multiple CNS employees, whose identities are known to your affiant, have stated that the defendant TAE JUNG KIM provided paper notes to his employees of

services and CPT codes to be billed. The employees then input the paper notes into the billing system. KIM's employees then transmitted the aggregated billing information to COMPANY-1. Accordingly, KIM, together with others, submitted or caused the submission of reimbursement requests to Medicare, Medicaid and private insurers for physical therapy and occupational therapy purportedly provided at CNS's offices.

## THE FRAUDULENT SCHEME

23. From at least January 2015 through at least May 2021, the defendant TAE JUNG KIM, together with others, engaged in a fraudulent scheme in which he submitted and caused to be submitted false and fraudulent claims for reimbursement for services that were not eligible for Medicare and Medicaid reimbursement, were not provided as billed, and/or were not provided.

24. In or about and between approximately January 1, 2015 and May 31, 2021, the defendant TAE JUNG KIM, together with others, submitted and caused to be submitted approximately $6.74 million in claims to Medicare for physical therapy services purportedly provided at CNS, and CNS was paid approximately $3.12 million on those claims. Many of these claims were fraudulently submitted as part of the scheme.

II.   Billing For Services Not Provided

    A.   Billing For Impossible Amount Of Services In A Day

25. The investigation to date has revealed that the defendant TAE JUNG KIM, together with others, submitted or caused the submission of fraudulent bills to Medicaid, Medicare and private insurers that were factually impossible in that they claimed that KIM personally provided more than 24 total hours of direct one-on-one physical therapy services in a single day.

26. For example, on May 28, 2021, the defendant TAE JUNG KIM, together with others, emailed 79 patient services records to COMPANY-1 purporting to describe physical therapy services provided by KIM to 79 patients on May 13, 2021. On each record, the "Bill Provider" was listed as "Dr. Taejung Kim" and accompanied by KIM's Physical Therapist license number. KIM's descriptions of the services rendered explicitly stated that he provided 15 minutes of physical therapy services. For example, KIM's patient services records for 72 of the 79 patients on May 13, 2021, stated that the patients purportedly received one or two units of "Therapeutic procedure, 1 or more areas, each 15 minutes…" under CPT codes 97110 (Therapeutic Exercise) and 97112 (Neuromuscular Re-Education) (emphasis added). As set forth supra at ¶ 16, the CPT codes billed for these "timed" services assumed that the services were provided for 15 minutes on average. Conservatively assuming that KIM provided all of the timed physical therapy services for the minimum time permitted by Medicare as set forth supra at ¶ 16, KIM purportedly personally provided over 50 hours of one-on-one timed physical therapy services on May 13, 2021 alone.[1] That estimate does not include additional services (a) for which Medicare does not require a set amount of one-on-one treatment time; (b) for which KIM did not have to be present (e.g., unattended electrical stimulation, CPT Code 97014); or (c) which could have been provided by individuals other than a licensed physical therapist.

---

[1] For example, the defendant TAE JUNG KIM billed for three 15-minute timed units of physical therapy purportedly provided to patient "A.C.," an individual whose identity is known to your affiant, on May 13, 2021. Specifically, KIM billed for one unit of CPT code 97110 (Therapeutic Exercises), one unit of CPT code 97112 (Neuromuscular Reeducation) and one unit of CPT code 97530 (Therapeutic Activities). Accordingly, as KIM billed for three units of 15-minute timed units, he purported to have spent 38-52 minutes of timed services. For purposes of my analysis, I assumed that KIM provided the minimum amount of timed services permissible. Here, for A.C., that required a minimum of 38 minutes of timed one-on-one treatment by KIM. Notably, in addition to the timed services billed, KIM also billed for an additional untimed CPT code and service (CPT code 97535, Self-Care/Home Management Training) that I have not included in my calculations.

27. As another example, from May 29 to June 1, 2021, the defendant TAE JUNG KIM, together with others, emailed 71 patient services records to COMPANY-1 purporting to describe physical therapy services provided by KIM to 70 patients on May 25, 2021.[2] Conservatively assuming that KIM provided all of the timed physical therapy services for the minimum time permitted by Medicare as set forth supra at ¶ 16, KIM purportedly personally provided over 48 hours of one-on-one timed physical therapy services on May 25, 2021 alone. Once again, that estimate does not include additional services (a) for which Medicare does not require a set amount of one-on-one treatment time; (b) for which KIM did not have to be present; or (c) which could have been provided by individuals other than a licensed physical therapist.

28. Based on the investigation to date, CNS did not employ another licensed physical therapist besides the defendant TAE JUNG KIM from 2015 to May 2021.[3] In addition, CNS only employed one licensed Physical Therapist Assistant in 2021. But, as set forth below in ¶ 41, that Physical Therapist Assistant worked exclusively on weekends from 2018 to 2021, except for a short initial period when she was first hired. Accordingly, it would have been impossible for CNS and KIM to have provided more than 24 hours of direct one-on-one physical therapy services in a single day in 2021.

---

[2] For one patient, whose identity is known to your affiant, the defendant TAE JUNG KIM, together with others, emailed two identical patient services records. For purposes of my analysis, I have only counted the time submitted for that patient once.

[3] New York State Department of Labor records do indicate that the defendant TAE JUNG KIM's wife, a licensed Physical Therapist, was paid for work at CNS. Nonetheless, multiple CNS employees consistently stated that KIM's wife never worked at CNS.

29. Accordingly, the defendant TAE JUNG KIM, together with others, caused Medicare, Medicaid and private insurers to be fraudulently billed for physical therapy services purportedly provided on at least May 13 and May 25, 2021.

B. Fraudulent Billing for a Confidential Source

30. Between September 22, 2020 and November 7, 2020, a confidential source ("CS"), under the supervision of special agents with HHS-OIG and the FBI, went to CNS's offices on eleven occasions.[4] The CS made consensual audio/video recordings of the CS's visits, including interactions with the defendant TAE JUNG KIM and others at CNS (the "Recorded Visits"). After each visit, the CS spoke with law enforcement agents and described the CS's experiences at CNS. The CS's visits to CNS established that false and fraudulent claims for physical therapy services purportedly provided to the CS were submitted for reimbursement by Medicaid through a managed care organization ("INSURANCE COMPANY-1"), whose identity is known to your affiant.

31. The defendant TAE JUNG KIM, together with others, caused claims to be submitted to INSURANCE COMPANY-1 for services purportedly provided to the CS for at least 10 of his 11 visits. For 10 days that the CS visited CNS, KIM, together with others, submitted or caused the submission of fraudulent bills to Medicaid for services never provided, including electrical stimulation, home management training, therapeutic exercises, and neuromuscular reeducation, among other things.

---

[4] The CS has pled guilty to money laundering pursuant to a cooperation agreement. The CS is currently cooperating in hopes of receiving leniency at sentencing (and has not yet been sentenced). The CS has provided reliable information in the course of this investigation. The CS's information has been corroborated by other evidence obtained during the course of this investigation, including, but not limited to, the consensual audio and video recordings the CS has made.

32. In addition, Medicare and Medicaid permitted only licensed Physical Therapists, Physical Therapist Assistants, Occupational Therapists and Occupational Therapist Assistants (collectively, "Licensed Professionals") to provide reimbursable treatments to beneficiaries. Despite billing Medicaid for treating the CS on 17 separate dates, the CS was actually treated by Licensed Professionals on only two occasions – on September 22, 2020, when the defendant TAE JUNG KIM performed an initial evaluation, and on October 27, 2020, when a licensed Occupational Therapist gave the CS a hand massage. Instead, the CS was treated by other CNS staff members, who were not licensed to provide physical therapy or occupational therapy services. As a result, the treatments billed were not performed by Licensed Professionals trained and authorized to perform those medical services, and CNS fraudulently sought reimbursement for those treatments.

33. For example, on September 20, 2020, the CS met with a CNS pain management doctor for five minutes; met with the defendant TAE JUNG KIM for five minutes; and received a massage. Nonetheless, KIM, together with others, submitted or caused the submission of fraudulent bills to Medicaid for <u>inter</u> <u>alia</u> "Physical therapy evaluation;" "Home management training;" "30 minutes neuromuscular reeducation;" and "30 minutes therapeutic exercises." KIM billed Medicaid approximately $475 for these purported services, and Medicaid paid approximately $173.

34. On each of nine other visits by the CS to CNS, the CS received massages. The massages were not provided by the defendant TAE JUNG KIM or any licensed Physical Therapist Assistant. In addition, during these nine other visits, the CS received paraffin treatments on five occasions. Paraffin treatment is the application to the body of paraffin wax, which is a natural emollient. Paraffin treatment is not a recognized reimbursable treatment by

Medicaid or Medicare for the billing codes that were used.   Nonetheless, for all of the nine other visits by the CS to CNS, KIM, together with others, submitted or caused the submission of fraudulent bills to Medicaid for inter alia "15 minutes electrical stimulation; 30 minutes neuromuscular reeducation; 30 minutes therapeutic exercises; 30 minutes kinetic activities." These billing codes should not have been used for the services provided to the CS.   KIM billed Medicaid approximately $300 on each occasion for these purported services, and Medicaid paid approximately $110 each time.

          C.          <u>Billing for Services Contradicted By CNS's Security Camera Recordings</u>

          35.          On May 28, 2021, the Honorable Lois Bloom, United States Magistrate Judge for the Eastern District of New York, issued a search warrant for CNS's offices.   Pursuant to that search warrant, law enforcement agents seized CNS's internal security camera recordings. Those recordings reflect that the defendant TAE JUNG KIM, together with others, submitted and caused to be submitted false and fraudulent claims for reimbursement for services that were not eligible for Medicare and Medicaid reimbursement, were not provided as billed, and/or were not provided.

          36.          For example, the internal security camera recordings show that on May 3, 2021, PATIENT-1, an individual whose identity is known to your affiant, visited CNS.   The recordings show that PATIENT-1 entered a treatment room at or about 10:02 a.m. and exited the treatment room at or about 10:58 a.m., approximately 56 minutes later.   The recordings show the defendant TAE JUNG KIM entered the treatment room at or about 10:38 a.m. and exited the treatment room at or about 10:39 a.m., approximately two minutes later.

          37.          Despite being in the room with PATIENT-1 for approximately two minutes, the defendant TAE JUNG KIM, together with others, submitted or caused the

submission of a bill for three units of "timed" one-on-one physical therapy by a licensed Physical Therapist to Medicare. As set forth supra at ¶ 16, three units of "timed" physical therapy require 38 to 52 minutes of one-on-one treatment with a physical therapist. Despite seeing PATIENT-1 for only approximately two minutes, KIM, together with others, fraudulently billed Medicare for $120 for the three "timed" units of physical therapy purportedly provided to PATIENT-1, and Medicare paid $70.86 to the provider.

38. Similarly, on May 17, 2021, CNS's internal security camera recordings also show that the defendant TAE JUNG KIM was in a treatment room with PATIENT-1 only for approximately two minutes, but KIM, together with others, again fraudulently billed Medicare for $120 for the three "timed" units of physical therapy purportedly provided to PATIENT-1, and Medicare again paid $70.86 to the provider.

D. Billing For Services Provided By A Physical Therapist Assistant On Weekends When Kim Was Not In The Clinic

39. As set forth supra ¶ 17, New York state law permitted providers to bill Medicare and Medicaid for physical therapy provided by a licensed Physical Therapist Assistant only when the services were performed under the supervision and with the on-site presence of a licensed Physical Therapist.

40. Despite those requirements, from in or about 2018 to in or about 2021, the defendant TAE JUNG KIM, together with others, submitted and caused to be submitted false and fraudulent claims for services provided by a licensed physical therapist assistant ("PHYSICAL THERAPIST ASSISTANT-1" or "PTA-1"), an individual whose identity is known to your affiant, on weekends when KIM was not physically present.

41. PTA-1 told law enforcement that he/she began working for the defendant TAE JUNG KIM in early 2018. From in or about 2018 to in or about 2021, PTA-1 worked on

weekends only, treating patients.   PTA-1 stated that during the three years he/she worked for KIM at CNS, KIM was at the clinic on a weekend only approximately three or four times. PTA-1 stated that he/she saw KIM on the weekends once or twice, and the other approximately two times he/she heard KIM or hear from someone else that KIM was present at the clinic on the weekend.   On the three or four occasions KIM was present at CNS on a weekend that PTA-1 was working, KIM did not see patients.   PTA-1 stated that, on those occasions, KIM was present at CNS for under an hour.   PTA-1 stated that, in general, if he/she had any questions or issues about patients or treatments, he/she would text or call KIM.

42. From January 2018 through May 30, 2021, the defendant TAE JUNG KIM, together with others, submitted or caused the submission of approximately $222,291.04 in fraudulent bills to Medicare for physical therapy services provided by PTA-1 and other unsupervised, unlicensed practitioners on weekends, and Medicare paid approximately $115,708.74.

E.     Billing For Services When Kim Was Out Of The Country

43. From at least August 2015 through at least October 2017, the defendant TAE JUNG KIM, together with others, submitted and caused to be submitted to Medicare and Medicaid false and fraudulent claims that KIM had provided physical therapy services when, in fact, KIM was traveling overseas on four separate occasions.

44. For example, I and other federal agents have reviewed international travel records for the defendant TAE JUNG KIM.   The records reflect that KIM departed the United States on or about 12:00 a.m. on Thursday, September 21, 2017, and did not re-enter the United States until on or about 10:52 p.m. on Sunday, October 8, 2017.

45. I and other federal agents have also reviewed the claims submitted by COMPANY-1 to Medicare for services purportedly rendered to Medicare beneficiaries by the defendant TAE JUNG KIM from September 21, 2017 to October 8, 2017. The Medicare records reflect that KIM, together with others, submitted or caused the submission of approximately 767 claims to Medicare for services purportedly rendered by KIM during that time period. These approximately 767 claims pertained to approximately 55 unique patients, some of whom purportedly visited Clinic-1 multiple times during the relevant time period. The claims all stated that KIM provided the services when, in fact, KIM was traveling internationally during that time and could not have provided the services billed to Medicare.

46. In addition to the example above, the defendant TAE JUNG KIM, together with others, submitted or caused the submission of fraudulent claims to Medicare for services purportedly rendered when KIM was traveling overseas from August 20, 2015 to August 23, 2015; from July 1, 2016 to July 10, 2016; and from October 6, 2016 to October 15, 2016.

47. In total, the defendant TAE JUNG KIM, together with others, submitted and caused the submission of approximately $81,555.99 in claims to Medicare for services purportedly rendered while KIM was out of the country on the four occasions set forth above, and Medicare paid approximately $38,826.80 on those claims.

## CONCLUSION

48.   Based on my training and experience, and the facts set forth in this affidavit, there is probable cause to believe that the defendant TAE JUNG KIM, together with others, submitted and caused the submission of fraudulent claims for reimbursement to Medicare and Medicaid for services that he had not actually rendered.

49.   Accordingly, I respectfully request that the Court issue a warrant for the arrest of the defendant TAE JUNG KIM so that he may be brought before the Court and dealt with according to law.

50.   It is further respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the instant complaint and application and related arrest warrant. The defendant TAE JUNG KIM is currently at liberty, and it is respectfully submitted that sealing these documents is necessary to prevent the defendant from avoiding arrest and prosecution.

_____
NADEEM AFZAL
Special Agent, HHS-OIG

Sworn to before me by telephone this
31st day of January, 2022

_____
THE HONORABLE CHERYL L. POLLAK
CHIEF MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of New York

| | |
|---|---|
| United States of America<br>v.<br>TAE JUNG KIM<br><br>*Defendant* | ) ) ) ) ) ) )   Case No. 22-MJ-89 |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*     TAE JUNG KIM                                                                                                               ,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment     ☐ Superseding Indictment     ☐ Information     ☐ Superseding Information     ☑ Complaint
☐ Probation Violation Petition     ☐ Supervised Release Violation Petition     ☐ Violation Notice     ☐ Order of the Court

This offense is briefly described as follows:

   Violations of Title 18, United States Code, Sections 1347, 2 and 3551 et seq.

Date:     01/31/2022

*Issuing officer's signature:* Cheryl L. Pollak

City and state:    Brooklyn, New York         Hon. Cheryl L. Pollak, Chief Magistrate Judge, E.D.N.Y.
*Printed name and title*

---

**Return**

This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____
at *(city and state)* _____.

Date: _____

*Arresting officer's signature*

*Printed name and title*

AO 442  (Rev. 11/11)  Arrest Warrant (Page 2)

**This second page contains personal identifiers provided for law-enforcement use only and therefore should not be filed in court with the executed warrant unless under seal.**

*(Not for Public Disclosure)*

Name of defendant/offender:

Known aliases:

Last known residence:

Prior addresses to which defendant/offender may still have ties:

Last known employment:

Last known telephone numbers:

Place of birth:

Date of birth:

Social Security number:

Height:                                                                 Weight:

Sex:                                                                      Race:

Hair:                                                                     Eyes:

Scars, tattoos, other distinguishing marks:

History of violence, weapons, drug use:

Known family, friends, and other associates *(name, relation, address, phone number)*:

FBI number:

Complete description of auto:

Investigative agency and address:

Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*:

Date of last contact with pretrial services or probation officer *(if applicable)*: